Clerk of the Superior Court
*** Electronically Filed ***
C. Cuellar, Deputy
2/19/2021 5:47:54 PM
Filing ID 12566234

Keith Beauchamp (012434)
Roopali H. Desai (024295)
Marvin C. Ruth (024220)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona  85004
T:  (602) 381-5490
kbeauchamp@cblawyers.com
rdesai@cblawyers.com
mruth@cblawyers.com

*Attorneys for Plaintiff*

## ARIZONA SUPERIOR COURT

## MARICOPA COUNTY

| | |
|---|---|
| CARDINAL SQUARE, INC., an Arizona non-profit corporation,<br><br>        Plaintiff,<br><br>v.<br><br>MINA GUIAHI,<br><br>        Defendant. | No.  CV2021-002785<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER (WITH NOTICE) - AND -**<br>**ORDER TO SHOW CAUSE WHY DECLARATORY JUDGMENT SHOULD NOT BE ENTERED EXPEDITIOUSLY**<br><br>**(Expedited Consideration Requested)** |

Pursuant to Rule 65 of the Arizona Rules of Civil Procedure, Cardinal Square, Inc. ("Cardinal") seeks entry of a temporary restraining order ("TRO") prohibiting Defendant Mina Guiahi from obstructing Cardinal's application for a marijuana establishment ("ME") license by falsely claiming to the Arizona Department of Health Services ("ADHS") that she is a director and officer of the company. Alternatively, Cardinal seeks a declaration that Guiahi in fact resigned in July 2020 or, alternatively, that she was removed as an officer and director of Cardinal in December 2020. Alternatively, Cardinal seeks judicial removal pursuant to A.R.S. § 10-3810 because Guiahi has engaged in fraudulent or intentional criminal conduct with respect to the corporation.

{00535095.2 }

Guiahi's actions, unless restrained or remedied by this Court prior to March 9, 2021, will cause Cardinal to lose its priority application status for obtaining an ME license, thus irreparably harming Cardinal. Accordingly, Cardinal asks that a hearing on its request for temporary restraining order be set at the Court's earliest convenience, and that the proposed form of order submitted herewith be entered thereafter. The relief sought by Cardinal is supported by the Verified Complaint filed herewith, and the memorandum of points and authorities set out below.

## I.    BACKGROUND

Cardinal's sole purpose is to operate a dual license medical and recreational marijuana business in Arizona. Cardinal currently holds a license under the Arizona Medical Marijuana Act ("AMMA").  [Compl. ¶¶ 7-9] As a current AMMA license holder in good standing with ADHS, Cardinal has priority status to submit an acceptable application to ADHS for its ME license under the recently enacted Responsible Adult Use of Marijuana laws. [*Id*. ¶¶ 15-18] While Cardinal is *entitled* to an ME license as an "early applicant," it must file its application with ADHS no later than March 9, 2021. [*Id*. ¶¶ 19-22]  It is critical that Cardinal submit its complete application to ADHS by March 9, 2021 to ensure that it will obtain its marijuana establishment license and become a dual licensee under the Smart and Safe Arizona Act. [*Id*. ¶¶ 23]

Guiahi, a former officer and director of Cardinal, should have no role to play in Cardinal's application. She resigned in June 2020, refused to communicate with Cardinal for months, and took a job with another cannabis company in New York.  [*Id*. ¶¶ 32-41]  But in approximately August 2020, Guiahi claimed in a private communication to ADHS that she had not resigned.  Because she was reinstated as a Director and Officer on the records maintained by ADHS, Cardinal's counsel requested on December 1, 2020 that she approve a straightforward but critical board resolution allowing Cardinal to relocate its Dispensary License to a new location, thereby allowing the Dispensary License to be operational by the

1   beginning of 2021.  [*Id.* ¶¶ 46-47 & Ex. L to Compl.]  Guiahi refused to sign the resolution.

2   Instead, through counsel, she demanded a $1,000,000 payment to resign and/or sign whatever

3   documents were needed by Cardinal.  This act was not merely a breach of her contractual

4   obligations and fiduciary duty (assuming she was a Director and Officer of Cardinal) but also

5   a criminal act of extortion.  [*Id.* ¶¶ 48-53].

6          Rather than bow to her extortionate demand, Cardinal passed a Board Resolution on

7   December 8, 2020 removing Guiahi as a Board member and Officer.  [*Id.* ¶¶ 54-56 & Ex. M

8   to Compl.]  Guiahi has never challenged the Board resolution removing her for cause. Yet she

9   continues to falsely represent to ADHS that she is a current Director and Officer of Cardinal.

10  [*Id.* ¶ 58] As a result, ADHS has refused to remove Guiahi from its records as one of Cardinal's

11  Directors and Officers, under a misguided belief that doing so would improperly involve the

12  agency in Cardinal's corporate affairs. Moreover, ADHS insists that, based on its regulations,

13  Cardinal's application must be signed by all the Directors and Officers ADHS lists in its

14  records, including Guiahi.

15         Because ADHS will not recognize Cardinal's corporate actions removing Guiahi, and

16  in light of the impending March 9 "early applicant" deadline, Cardinal requested on January

17  25, 2020 that Guiahi sign the requisite attestation by January 29, notwithstanding Cardinal's

18  view that she is not a Director or Officer.  [*Id.* ¶¶ 61-64]  After all, if Guiahi is a current Director

19  and Officer of Cardinal, she has a fiduciary and contractual duty to ensure Cardinal's success,

20  including assisting with Cardinal's application for an ME license. But Guiahi refused to

21  respond, giving no explanation, making clear her intent to block Cardinal's application and

22  extort the company. [*Id.* ¶ 65]

23         Although Guiahi could not be bothered to provide any response to the time sensitive

24  request about obtaining the license critical to the continued existence of the Cardinal, she did

25  on that same date submit a false statement to the ACC without notice to Cardinal, averring

26  under penalty of perjury that she was a Director and Officer of Cardinal notwithstanding her

{00535095.2 }                                    3

1   removal in December and resignation in July. Her submission to the ACC was false and

2   fraudulent and violates A.R.S. § 10-11631.  [*Id.* ¶¶ 66-69]

3        Having heard nothing from Guiahi, and at ADHS's suggestion, Cardinal proceeded with

4   its application without Guiahi's cooperation.  Cardinal submitted its application on February 4,

5   2021 and included a declaration from Cardinal Director Michael Wang that stated, among other

6   things, that Guiahi refused to sign the attestation ADHS required for the application and

7   requesting that ADHS accept the application in light of Guiahi's months long intransigence.

8   [*Id.* ¶¶ 70-74, & Ex, Q to Compl.]  On February 5, 2021 ADHS rejected the application because

9   it did not strictly comply with the Department's rules; that is, it was not signed by Guiahi, a

10  listed director. [*Id.* ¶ 74]

11       On February 17, 2021, Guiahi appeared at the informal settlement conference with

12  ADHS following its denial of the application and again falsely asserted that she is a Director

13  and Officer of Cardinal.  She and her counsel also stated that she does not oppose Cardinal's

14  application for a marijuana establishment license and agrees that Cardinal should be awarded

15  its license.  Yet she refused to sign the attestation approving the submission of the application.

16  [*Id.* ¶¶ 83-85]  ADHS gave Guiahi until noon on February 19, 2021 to sign the attestation and

17  allowed her to submit it via e-mail.  When the noon deadline passed without Guiahi signing

18  the attestation, Cardinal promptly filed this action.

19       Guiahi's true and deliberate intentions could not be more clear: push Cardinal to the

20  edge of ruin in the hopes of a payoff. Cardinal requests that this Court order Guiahi to

21  immediately cease misrepresenting that she is a director and officer of Cardinal or, in the

22  alternative, order Guiahi to perform in accordance with the fiduciary and contractual duties of

23  a Cardinal director and officer. Absent an order granting the requested relief, Cardinal will

24  suffer irreparable harm.

25

26

{00535095.2 }                                4

## II.   LEGAL ARGUMENT

A party seeking a TRO must show: (1) a likelihood of success on the merits; (2) the possibility of irreparable harm if relief is not granted; (3) a balance of hardships favoring the moving party; and (4) public policy weighing in favor of injunctive relief. *Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990). "The critical element in this analysis is the relative hardship to the parties." *Id*. Courts apply a sliding scale to assess these factors. *Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 410-11 ¶¶ 9–10 (2006). This requires "either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and the balance of hardships tips sharply in his favor." *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 495 ¶ 21 (App. 2013) (quotation marks omitted). The stronger the likelihood of success on the merits, the less irreparable harm is necessary (and vice versa). *Smith*, 212 Ariz. at 411 ¶ 10.

All four factors weigh in favor of granting relief here. However, two are immediately and incontrovertibly clear. First, Cardinal is *certain* to suffer irreparable injury absent relief. Cardinal must submit a satisfactory application to ADHS by March 9, 2021, or its right to a license, and the associated revenue, will irretrievably vanish. Second, the balance of hardships tips *entirely* in Cardinal's favor; no one, least of all Guiahi, will suffer any hardship if Cardinal is permitted to obtain its ME license and preserve its business purpose. Thus, while Cardinal has a strong likelihood of prevailing on its claims that Guiahi was removed for cause, Cardinal need only demonstrate that serious questions exist.

### A.   Cardinal Is Certain to Suffer Irreparable Harm Without an Injunction.

Cardinal's reality without a preliminary injunction is stark.

Cardinal meets the *only* statutory requirement for obtaining its ME license as an "early applicant"—Cardinal is "[a] nonprofit medical marijuana dispensary that is registered and in good standing with the department." *See* A.R.S. §§ 36-2850(10)(b), 36-2854(A)(1)(d).  No one—including Guiahi or ADHS—has suggested that Cardinal is not in good standing.  Thus,

1   the only obstacle to Cardinal receiving its ME license is submission of an application

2   acceptable to ADHS—an application that does not, and should not, require Guiahi's signature.

3   Yet if Cardinal is unable to submit an acceptable application by March 9, 2021, then Cardinal

4   will lose the license to which it is entitled.  The loss of that license alone constitutes irreparable

5   harm.  *See TP Racing, L.L.L.P. v. Simms*, No. 1 CA-CV 14-0348, 2016 WL 423803, at \*5 ¶ 19

6   (Ariz. Ct. App. Feb. 4, 2016) (a party's risk of losing a horseracing permit "essential to its

7   operations" created a significant threat of irreparable harm); *see also Desert Subway, Inc. v.*

8   *City of Tempe*, 322 F. Supp. 2d 1036, 1041 (D. Ariz. 2003) (franchisees established irreparable

9   harm from City of Tempe's denial of permits to display valuable signage).

10   Furthermore, the loss of the license will also deprive Cardinal of its sole business

11   purpose, operating a dispensary.  *See, e.g.*, *Amer. Passage Media Corp. v. Cass Comm., Inc.*,

12   750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient

13   to establish irreparable harm."); *Puppies 'N Love v. City of Phoenix*, No. CV-14-00073-PHX-

14   DGC, 2014 WL 1329296, at \*3 (D. Ariz. April 2, 2014) ("Because the loss of one's business

15   carries more than merely monetary consequences, it constitutes irreparable harm.").

16   As it is, every day that Guiahi blocks Cardinal's application is another day of lost

17   revenue and market share for Cardinal (and lost tax revenue and employment opportunities for

18   the citizens of Arizona).  Should Guiahi's interference cause Cardinal to lose its dual license

19   entitlement, there is no remedy at law for Cardinal – suing Guiahi for millions in future lost

20   profits will do nothing to remedy the loss of its ME license (nor would Guiahi have the ability

21   to pay such a large judgment). Because the full extent of these harms are not remediable by

22   damages, they are irreparable. *IB Property Holdings, LLC v. Rancho Del Mar Apartments Ltd.*,

23   228 Ariz. 61, 65 ¶¶ 10–11 (App. 2011).

24   This factor is entirely in Cardinal's favor.

25

26

**B.    The Balance of Hardships Tips Sharply in Cardinal's Favor.**

On the one hand, the hardships Cardinal will suffer without relief are obvious. If Guiahi is not enjoined, Cardinal will miss the "early applicant" deadline and lose its entitlement to an ME license worth tens of millions of dollars. Consequently, Cardinal will also lose the opportunity to operate a dual license medical and recreational marijuana business.

On the other hand, Guiahi will suffer no hardship if she is enjoined from blocking Cardinal's application for an ME license. To the contrary, she stands to gain a lot. Cardinal is seeking a TRO and preliminary injunction, but should Guiahi eventually succeed on the merits, *she will be a director of a functioning entity with the dual license it was incorporated to hold.*

This factor is entirely one-sided in Cardinal's favor.

**C.    Cardinal Has a Strong Likelihood of Success on the Merits of Its Claims.**

Where the balance of hardships tips this sharply in Cardinal's favor, Cardinal need only show that its complaint presents "serious questions." *Arizona Ass'n of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, 12 ¶ 12 (App. 2009).  These "serious questions" refer to "questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Puppies 'N Love*, 2014 WL 1329296, at *4 (quotation omitted). On its claim that Guiahi is not a Director and Officer of Cardinal, it meets both the "serious questions" and "likely to succeed" standard.

**1.    Guiahi resigned from, or abandoned, Cardinal**

Guiahi submitted her immediate resignation from The Pharm and its affiliates (including Cardinal) on June 20, 2020. Her inaction thereafter, coupled with taking a position with another cannabis company in New York, confirm that her resignation included Cardinal. *See e.g. Thermo-Kinetic Corp. v. Allen*, 16 Ariz. App. 341, 345 (1972) (determining whether employee voluntarily abandoned employment can "be ascertained from all the facts and circumstances."); *see also McCall v. Cull*, 51 Ariz. 237, 241–42 (1938) (government board

1    members can "abandon" or impliedly resign from their position when they fail to perform their

2    duties with "actual or imputed intention . . . to abandon and relinquish the office").

3    After Guiahi was appointed to the Cardinal board in February 2020, her relationship

4    with The Pharm unraveled quickly. On June 8, 2020, The Pharm sent written notice to Guiahi

5    limiting her CFO responsibilities with The Pharm and temporarily transitioning her "day-to-

6    day responsibilities with the company and its affiliates and subsidiaries." In response, Guiahi

7    submitted her "immediate resignation" (the "Resignation Letter"). [Compl. ¶¶ 31-33]

8    While Guiahi sent the Resignation Letter to The Pharm Board of Directors, she knew

9    and understood the affiliation between the two entities. Cardinal, after all, has no owners and

10   is not capitalized. Instead, The Pharm has a joint venture by which it funds Cardinal's efforts

11   to obtain its license and operate its dispensary. Further, over the years, there has been

12   significant overlap between The Pharm's officers and Cardinal's board of directors. Guiahi

13   herself repeatedly acknowledged the relationship between the two.

14   Consequently, Cardinal understood Guiahi's "immediate resignation" to include the

15   unpaid board position she held at Cardinal only by virtue of her work for The Pharm. Guiahi's

16   subsequent actions confirmed her intent and Cardinal's understanding:

17   
18   • To memorialize her resignation, Cardinal sent three written communications to Guiahi in July asking that she sign, inter alia, a resolution for Cardinal accepting her resignation and approving the appointment of a new director and officer. Guiahi never asserted that she had only intended to resign from The Pharm. She never contested Cardinal's understanding that her resignation included Cardinal.

19   

20   

21   • From June 8, 2020 until December 2, 2020 (when her lawyer demanded $1 million), *Guiahi did not communicate with Cardinal at all*.

22   • In the summer of 2020, Guiahi moved to New York and took a position as the Executive Vice President of another cannabis operator.

23   

24   [Compl. ¶¶ 37-40]   In short, to the extent Guiahi did not resign from Cardinal upon her

25   resignation from The Pharm and its "affiliates," she constructively resigned and abandoned her

26

1   position. Guiahi is not a Director and Officer of Cardinal and should be enjoined from asserting

2   otherwise.

3          **2.**        **Cardinal confirmed Guiahi's separation by removing her for cause.**

4          To the extent there is any question as to whether Guiahi's resignation was effective,

5   Cardinal has a strong likelihood of success on its claim that Guiahi was removed for cause and,

6   therefore, is not a Cardinal Director or Officer.

7          On December 1, 2020, Cardinal sent Guiahi an email requesting that she sign off on a

8   board resolution for Cardinal to relocate its existing medical dispensary license to a new

9   location. Relocating and making the license operational was critical to protecting Cardinal's

10   interests and ensuring compliance with the AMMA and the recently passed Responsible Adult

11   Use of Marijuana laws.  [Compl. ¶¶ 46-47]  A day later, on December 2, 2020, Guiahi

12   communicated with Cardinal for the first time since her June 8 resignation. But Guiahi did not

13   respond to sign the resolution. Rather, she demanded $1,000,000.00 (through her lawyer) for

14   her cooperation in signing whatever documents Cardinal required to advance its business

15   interests. Guiahi claimed The Pharm owed her those monies for severance, bonuses, and her

16   membership interests in The Pharm.  [*Id*. at ¶¶ 48-51]

17          Cardinal acted swiftly. On December 8, 2020, Cardinal's "other" director, Michael

18   Wang, executed a resolution removing Guiahi as a Director and Officer for cause (the

19   "December 2020 Resolution") for "attempting to leverage a financial settlement only for

20   Guiahi's personal benefit," "fail[ing] to take [actions] to further the operational goals and stated

21   purpose of the Corporation," and otherwise engaging in a "dereliction of her duties." [Compl.

22   ¶¶ 54-56 & Ex. M to Compl.]

23          a.       <u>Cardinal had cause to terminate Guiahi</u>

24          Under Cardinal's Bylaws, a director may be removed for cause, including any material

25   act of self-dealing or any material act constituting gross negligence, willful misconduct, or

26   fraud.  [Ex. B, K to Compl. at § 6.9.]  Further, directors of a non-profit corporation owe a

1   fiduciary duty to the corporation.  *See* A.R.S. § 10-3830(A)(1)-(3); *Master Records, Inc. v.*

2   *Backman,* 133 Ariz. 494, 497 (1982).  Those fiduciary duties include a duty of loyalty (to act

3   in good faith and in the company's, not the director's, best interest);  *Shoen*, 167 Ariz. at 65

4   (describing fiduciary duties owed to corporation).  As the court in *Mann v. GTCR* explained, a

5   breach of the fiduciary duty exists where, among other things,

6       the fiduciary intentionally acts with a purpose other than that of advancing the
        best interests of the corporation…or where the fiduciary intentionally fails to act
7       in the face of a known duty to act.

8   483 F. Supp. 2d 884, 900–01 (D. Ariz. 2007) (emphasis added) ((*quoting Stone v. Ritter,* 911

9   A.2d 362, 369 (Del. 2006)). Cardinal had cause to remove Guiahi for breach of her fiduciary

10  duty.

11      Quite simply, it is in Cardinal's best interest to hold and operate marijuana licenses. It

12  is, in fact, Cardinal's entire business purpose. Guiahi, however, made clear in early December

13  that there was a $1 million price for her cooperation in advancing those interests. Since then,

14  Guiahi's intransigence has continued, refusing to sign any Cardinal documents, including

15  Cardinal's application to ADHS, all without offering a single argument that her actions are in

16  Cardinal's best interest. There is none. Whatever purported grievances Guiahi thinks she has

17  against The Pharm, none of them could possible justify her failure to act in *Cardinal's* best

18  interests. Consequently, Cardinal was within its rights under its Bylaws, A.R.S. § 10-

19  3830(A)(1)-(3), and the common law to confirm Guiahi's removal for cause.

20              b.      Cardinal's termination of Guiahi complied with its Bylaws

21      Nonprofit entities may establish their own procedures, via their bylaws, for terminating

22  a director or officer. *See* A.R.S. § 10-3808 ("a director may be removed from office pursuant

23  to any procedure provided in the articles of incorporation or bylaws"). [1] Those bylaws

24

25  [1] While the nonprofit statutes have default procedures for removing directors (and officers),
    those procedures *only* apply, "if the…bylaws do not provide a procedure for removal of a
26  director from office." A.R.S. § 10-3808(B).  Because Cardinal's bylaws provide a process for
    removing a director, the default procedures set forth in the statute have no application.  *See*

1  constitute a contract between the directors and the corporation.  *BlackRock Credit Allocation*

2  *Income Tr. v. Saba Capital Master Fund, Ltd.*, 224 A.3d 964, 977 (Del. 2020), reh'g

3  denied (Jan. 29, 2020); *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 304 (App. 1988)

4  ("rights of members of a private organization are governed by the articles of incorporation and

5  by-laws, which constitute a contract between the members and the organization"). Cardinal's

6  Bylaws establish the manner by which Guiahi could be removed, which Cardinal followed.

7        Specifically, Section 6.9, "Removal of a Director," provides that the "Board of Directors

8  shall have the authority to remove a Director for cause or without cause, pursuant to the consent

9  and approval of the Directors then serving."  The requirements for "consent or approval" are

10  set forth in Section 6.5, which states that:

11        Board of Directors shall have the authority to act on behalf of the
      Corporation, take any actions necessary, and/or execute any document, contract
12       or agreement…pursuant to the terms, covenants and requirements of these
      Bylaws…*Unless otherwise excepted herein*, if the Corporation has *greater than*
13       *two (2) Directors*, all such actions shall require the consent and approval of a
      majority of the Directors then serving."

14

15  [Exs. B, K to Compl. at § 6.5 (emphasis added)]  Cardinal, as permitted by its bylaws had only

16  two directors:  Guiahi (at least according to Guiahi) and Michael Wang.  *See id*. at  § 6.4.

17  Under Section 6.5, however, a *majority* vote was required *only* in the event there are *more* than

18  two directors. Consequently, when Cardinal has two directors, no majority is required, and

19  either director can act, within the confines of their fiduciary duties, to remove the other director

20  for cause.

21        Any assertion by Guiahi that unanimous approval was required to confirm her

22  termination is contrary to the plain language of the Bylaws and bedrock principles of contract

23  interpretation.  Arizona law requires that a contract be interpreted in a way that does not render

24  parts of it superfluous. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158 (1993).

25  _____

26  *also* A.R.S. § 10-3206 ("bylaws of a corporation may contain any provision for regulating the
   affairs of the corporation that is not inconsistent with law or the articles of incorporation").

1    The court will not construe one provision in a contract so as to render another provision

2    meaningless, and will presume language was placed in the contract for a specific purpose.

3    *Tucker v. Byler*, 27 Ariz. App. 704, 707 (1976).  In other words, meaning should be given to

4    every word and phrase, *Hyde Park-Lake Park, Inc. v. Tucson Realty & Trust, Co.*, 18 Ariz.

5    App. 140, 143 (App. 1972), and no word in a contract should be ignored as surplusage if it

6    serves some reasonable purpose. *Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 187 (1997).

7         <u>First</u>, "majority" consent and "unanimous" consent are synonymous when there are only

8    two directors.  The only corporate actions that require unanimous consent, however, are

9    expressly enumerated in Section 6.6, and are limited to: (i) dissolving, liquidating, or winding

10   up Cardinal, (ii) selling or transferring substantially all of Cardinal's assets, and (iii) taking any

11   action which may cause noncompliance with the Medical Marijuana Act.  Cardinal could have

12   included removal of a director as one of the enumerated actions requiring unanimous consent

13   in the event Cardinal was governed by two directors.  It did not.  That is perfectly reasonable,

14   as the director at risk of removal could simply withhold her consent and deadlock the company.

15        <u>Second</u>, and in contrast to the requirements for removal of a director, when Cardinal

16   intended to require consent from a majority of directors to approve certain tasks, it expressly

17   included such language in the Bylaws.  Section 15.1, for example, states that Cardinal's bylaws

18   may only be "altered, amended, modified, supplemented, or repealed and replaced, pursuant

19   to the consent and approval *of a majority of the Directors*."  [Exs. B, K at § 15.1]  Similarly,

20   Section 6.7 requires "consent of a majority of Directors" to elect additional directors.  [*Id*. at

21   § 6.7]  That Cardinal Square did *not* require "approval by a majority of the Directors" for

22   removal of a director in Section 6.9, or for all other board actions in the event there are only

23   two directors in Section 6.5, is further evidence that the four corners of the contract do not

24   require a majority vote to remove a director.  Inserting an unwritten majority vote requirement

25   into some provisions (such as Section 6.9), when Cardinal plainly evinced its intent to include

26

1   such a requirement only when it saw fit (such as Sections 6.7 or 15.1), would run afoul of the

2   principle of construction that the Court must give meaning to every word and phrase.

3        Third, reading the Bylaws to implicitly require majority consent from two directors,

4   would render the provision in Section 6.5 requiring "majority" approval only if there are *more*

5   than two directors, mere surplusage.  After all, if Cardinal had wanted a majority vote on all

6   matters not subject to the unanimous vote provision in Section 6.7, it would simply have

7   required majority approval for all board actions irrespective of the number of board members.

8   *Gfeller v. Scottsdale Vista N. Townhomes Ass'n*, 193 Ariz. 52, 54, ¶ 13, 969 P.2d 658, 660

9   (App. 1998) ("We will, if possible, interpret a contract in such a way as to reconcile and give

10  meaning to all of its terms, if reconciliation can be accomplished by any

11  reasonable interpretation").[2]  Cardinal did not do so.  Instead, it exempted a two-director board

12  from the majority voting requirements in Section 6.5, by limiting majority approval to boards

13  made up of three or more directors.

14       Fourth, that directive was express and intentional.  *See Polk v. Koerner*, 111 Ariz. 493,

15  495 (1975) ("It is a fundamental rule in the interpretation of contracts that the court must

16  ascertain and give effect to the intention of the parties at the time the contract was made if at

17  all possible.")  The Second Amended & Restated Bylaws included a provision in Section 6.5

18  that stated "if the Corporation has two (2) Directors, all actions shall require the unanimous

19  consent and approval of the Directors then serving."  Cardinal, however, struck that provision

20  from the Third Amended & Restated Bylaws, which Guiahi signed, and from all subsequent

21  bylaws.  By removing that provision, Cardinal articulated its clear intent to be free from the

22  requirement that two directors must act unanimously (aside from those actions expressly

23  requiring unanimous consent as set forth in Section 6.6, or those actions requiring majority

24  _____

25  [2] This is a reasonable construction where the bylaws expressly allow for only two directors.  If
    majority, and thus unanimous, approval were required, Cardinal could be hopelessly

26  deadlocked as to any decisions, including removal of a director committing a per se breach of
    fiduciary duty.

1    consent in 6.7 and 15.1).   Instead, two directors could each exercise their authority

2    independently. *See id.; see also Otto v. Otto*, 1 CA-CV 18-0080, 2019 WL 613215, at \*4 (App.

3    Feb. 14, 2019) (where parties struck a contract provision providing blanket indemnity from the

4    draft agreement, it "clearly indicat[ed]" that none of the parties interpreted the contract as

5    containing a broad indemnify clause).

6        Thus, where the plain reading of the Cardinal Bylaws, and Cardinal's expressed intent,

7    allowed Director Wang to remove Guiahi as a director and officer, Cardinal is substantially

8    likely to prevail on the claim that Guiahi is no longer an officer and director. At a minimum,

9    Cardinal has a "fair chance of success on the merits." The Court should preliminary enjoin

10   Guiahi from asserting that she is a Cardinal officer or director.

11   <div style="text-align:center">

**3.      Specific performance of Guiahi's contractual duty is required by her fiduciary and contractual duties to cooperate.**

12

13       As noted above, Cardinal has—at a minimum—presented serious questions regarding

14   Guiahi's claim that she remains a Director and Officer of Cardinal. That is sufficient to enjoin

15   her from falsely claiming otherwise to ADHS, thereby interfering with Cardinal's license

16   application.  Alternatively, however, the Court can also preserve the status quo by compelling

17   Guiahi to act in accordance with the purported contractual and fiduciary duties she is claiming

18   (in bad faith) for herself. *See Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017)

19   ("[m]andatory injunctions are most likely to be appropriate when 'the status quo ... is exactly

20   what will inflict the irreparable injury upon complainant.'").  Here, the alleged status quo, at

21   least from ADHS's view, has Guiahi as a Cardinal Director and Officer.  That "status quo" is

22   causing irreparable harm, because Guiahi is refusing to perform the contractual and statutory

23   duties required of a Director and Officer.

24       First, if Guiahi were a Director and Officer she would have a contractual duty pursuant

25   to Section 6.2 of the Bylaws to "perform whatever tasks and action are necessary to ensure the

26   Corporation's success and positive impact on the community, now and in the future."  [Exs. B,

1    K to Compl. at § 6.2]  Here, maintaining the purported status quo would require that Guiahi

2    perform according to the bylaws she claims to be bound by.  Those bylaws are clear, Cardinal

3    has acted equitably, and requiring Guiahi to perform according to the contract by signing the

4    attestation would not inflict any hardship.[3]

5          Second,, Guiahi has a contractual and fiduciary duty to act in *Cardinal*'s best interest,

6    not her own.  She has not. She has repeatedly neglected to communicate with Cardinal, refused

7    to sign board resolutions, and refused to sign the required attestation for Cardinal's ME license

8    application.  That attestation provides, *in its entirety*, that Guiahi is "a principal officer or board

9    member for the medical marijuana dispensary listed on this application, and I approve this

10   application for a marijuana establishment license."  Guiahi has not, and cannot, argue that

11   interfering with Cardinal's license is in Cardinal's best interest.  Instead, in response to

12   ADHS's statement that it would immediately issue the license to Cardinal upon Guiahi's

13   submission of the attestation, Guiahi again declined.  She  asserted she first needed "to

14   understand how the Company plans to successfully implement a recreational license in

15   compliance with AZHDS requirements," a disingenuous assertion given that she refused to

16   take the critical step necessary for Cardinal to get its recreational license, then demanded a host

17   of irrelevant documents entirely unrelated to the application, and before concluding would not

18   sign anything unless Director Wang immediately resigned.  There is no business justification

19   for Guiahi's brinksmanship.  Her attempt to enrich herself at Cardinal's expense is a textbook

20

21   [3] "When addressing a request for an injunction to prevent the breach of a contract, the standard
22   for determining whether to grant injunctive relief is the same as for specific performance. *The
     Power P.E.O., Inc. v. Emps. Ins. Of Wausau*, 201 Ariz. 559, 563 (App. 2002) (affirming grant
23   of preliminary injunction compelling policyholder to provide $85,000 letter of credit to insurer
     as required under parties' contract). Generally, there are five requirements for a court to grant
24   specific performance:  (1) existence of a contract; (2) terms of that contract are certain and fair;
     (3) the party seeking specific performance did not act inequitably; (4) specific enforcement
25   does not inflict hardship on the other party in such a way to outweigh the anticipated benefit
     to the party seeking specific performance; and (5) there is no adequate remedy at law.  *Id*. at
26   563.

1    breach of her fiduciary duty.  The Court should require her to sign the attestation if she persists

2    in the fiction that she remains a director at Cardinal.

3          Finally, compelling Guiahi's signature on the ADHS application would do nothing more

4    than compel a ministerial act.  It would impose no further obligations, liabilities, or costs on

5    Guiahi, aside from those obligations Guiahi is accepting by virtue of her fraudulent claims to

6    director and officer status.  Arizona courts have ordered mandatory injunctions requiring much

7    more extensive/costly affirmative conduct than Cardinal is requesting here.  *See e.g.*, *The*

8    *Power P.E.O., Inc. v. Employees Ins. of Wausau*, 201 Ariz. 559, 564 ¶ 26 (App. 2002)

9    (affirming grant of preliminary injunction compelling policyholder to provide $85,000 letter

10   of credit to insurer as required under parties' contract); *Burton v. Celentano*, 134 Ariz. 594,

11   595 (App. 1982) (upholding a mandatory preliminary injunction compelling the defendants to

12   remove a wall on their property); *Swain v. Bixby Vill. Golf Course Inc.*, 247 Ariz. 405, 414

13   ¶ 37 (App. 2019) (granting injunction compelling defendant to operate golf course as required

14   under deed restrictions); *City of Scottsdale v. Thomas*, 156 Ariz. 551, 551 (App. 1988)

15   (reversing denial of "request for a mandatory injunction to compel removal of encroachments

16   on an easement" across defendant's land); *Stamatis v. Johnson*, 71 Ariz. 134, 135 (1950)

17   (affirming mandatory injunction compelling defendants "to reopen and restore to its former

18   condition an open irrigation ditch located on the defendants' land").  Because Cardinal meets

19   the elements for a preliminary injunction, Cardinal requests, in the alternative, that the Court

20   compel Guiahi's specific performance with her contractual and fiduciary duties under the

21   Bylaws.

22          **4.       Judicial removal is appropriate under A.R.S. § 10-3810**

23          This Court has the authority to remove directors of a non-profit corporation if it finds

24   that both: if the court finds that both: (1) Guiahi engaged in fraudulent conduct or intentional

25   criminal conduct with respect to Cardinal; and (2) removal is in the best interests of Cardinal.

26

On the first point, there is no question that Guiahi engaged in fraudulent or intentional criminal conduct. She has repeatedly falsely asserted to ADHS and the ACC that she is a Cardinal Director and Officer. Even if Guiahi disputes that she resigned from cardinal and disputes that she was removed for cause by the Company, the appropriate response is to seek relief from the courts. Not only has she not sought relief from the courts, Guiahi has never challenged or disputed Cardinal's Board Resolution removing her for cause. Rather, Guiahi has resorted to engaging in fraudulent conduct, such as misrepresenting her position to ADHS and filing a false and unauthorized change of officer form with the ACC. Moreover, Guiahi has engaged in intentional criminal conduct with respect to the Company—she demanded payment of one million dollars in exchange for her cooperation, which she knew was necessary for Cardinal to successfully submit its application for an ME license.

On the second point, there is also no question that Guiahi's removal is in the best interests of Cardinal. Guiahi has not been functioning as a Cardinal Director and Officer for months. To the contrary, she has gone out of her way to interfere with and block Cardinal's business opportunities. She is causing Cardinal to expend significant resources and risk obtaining an ME license, which is the sole purpose of the entity.

Because Cardinal is likely to succeed on the merits of its removal claim, the Court should grant Cardinal's request for a TRO.

**D.     The Public Interest Favors Granting an Injunction in Cardinal's Favor.**

The public has an interest in good corporate governance.  Conversely, it would harm the public's interest if former employees, officers and directors could hold companies hostage by making false claims regarding their authority and interfere with regulatory licensing proceedings.  This factor weighs heavily in favor of granting the requested injunction.

**III.   CONCLUSION**

Guiahi's extortionate conduct, premised on false claims that she remains a director and officer with the company, has imperiled Cardinal's license and its continued existence.

{00535095.2 }                                                     17

Because Cardinal has a strong likelihood of succeeding on the merits, and will suffer irreparable harm, while Guiahi will face no hardship whatsoever, the Court should issue a TRO declaring that Guiahi is no longer a director or officer of Cardinal and restraining her from taking any position to the contrary or otherwise obstructing or interfering with Cardinal's license application.

Respectfully submitted this 19th day of February, 2021.

**COPPERSMITH BROCKELMAN PLC**

By /s/Roopali H. Desai
Keith Beauchamp
Roopali H. Desai
Marvin C. Ruth

*Attorneys for Plaintiff*

{00535095.2 }                                    18