WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cardinal Square Incorporated, | No. CV-21-00314-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Mina Guiahi, | |
| Defendant. | |

Pending before the Court is Plaintiff Cardinal Square Incorporated's Motion for Temporary Restraining Order (TRO), which the Court is treating as a Motion for a Preliminary Injunction (Doc. 2; Doc. 18). On March 4, 2020, the Court denied the motion in part (Doc. 19), and on Friday, March 5, 2021, the Court held a preliminary injunction hearing on the remaining issues. The Court now rules on the remaining issues.

**I.  BACKGROUND**[1]

Following the Court's March 4 Order, the remaining issue in Cardinal's motion is whether Cardinal is entitled to a preliminary injunction removing Defendant Mina Guiahi from its board of directors during the pendency of this case. This request is based on Cardinal's allegation that Guiahi committed criminal extortion through her attorney, Lindsay Schube, during a December 2, 2020 phone call with Cardinal's attorney, Laura Bianchi. (Doc. 1-3 at 15–16). The Court noted that although this allegation was part of

---

[1] Because the Court set forth the relevant facts in its March 4 Order (Doc. 19), the Court will not recite them again in detail here; for a more through discussion of the background of the case, see *Cardinal Square Inc. v. Guiahi*, No. CV-21-00314-PHX-JAT, 2021 WL 824398, at *1–3 (D. Ariz. Mar. 4, 2021).

Cardinal's complaint, Cardinal did not request any injunctive relief specifically related to this claim. (Doc. 19 at 14–15). Instead, it requested a declaration that Cardinal's other board member and officer, Michael Wang, removed Guiahi pursuant to Cardinal's bylaws, an order enjoining Guiahi from continuing to represent to the Arizona Department of Health Services (ADHS) and Arizona Corporation Commission (ACC) that Guiahi continued to be a member of Cardinal, and specific performance of Guiahi's agreement under Cardinal's bylaws to act in Cardinal's best interest. (*Id.*). The Court denied each of these requests and ordered Cardinal to file a proposed form of order specifying the interim injunctive relief it was requesting related to the remaining claim. (*Id.*).

Cardinal's proposed form of order includes two forms of relief. First, Cardinal again requests a declaration of this Court that Wang properly removed Guiahi from her role at Cardinal consistent with its bylaws. (Doc. 22-1 at 3). Cardinal also requests that the Court remove Guiahi pending the conclusion of this case and either leave her seat on the board open or allow her to be temporarily replaced by another board member, who will resign if Guiahi prevails. (*Id.*).

On March 5, 2021, both Bianchi and Schube testified at a preliminary injunction hearing and offered fundamentally different versions of the phone conversation at issue. Consistent with her declaration filed in this case and the accompanying exhibit (Doc. 15-1 at 2–6), Bianchi testified that Schube told her that Guiahi categorically refused to sign documents essential to Cardinal's acquisition of a marijuana establishment license unless she received a non-negotiable sum of $1,000,000 that she believed a separate company, The Pharm, owed her. Consistent with her own declaration (Doc. 12-1 at 2–5), Schube testified that although she told Bianchi that Guiahi believed The Pharm owed her the money, she never stated that the amount was non-negotiable or categorically refused to sign any documents related to Cardinal. Instead, Schube testified that because Bianchi represented both Cardinal and The Pharm, Schube discussed outstanding issues Guiahi had related to both companies independently.

## II. LEGAL STANDARD

For a court to issue a TRO or preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Under the Ninth Circuit "serious questions" test, the four *Winter* factors may be evaluated on a sliding scale, and a TRO or preliminary injunction "is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*)).

## III. DISCUSSION

### a. Equitable Factors

The Court previously ruled that because the equitable factors tip sharply in Cardinal's favor, the Court should consider whether serious questions going to the merits exist rather than a strong likelihood of success on the merits. (Doc. 19 at 7–8). In light of Cardinal's updated request for injunctive relief and the Court's prior ruling, the Court finds it appropriate to update its analysis of the equitable factors in this case.

The Court continues to find that Cardinal will likely suffer irreparable harm if relief is denied and the balance of equities tips in Cardinal's favor. As discussed more fully in the Court's prior ruling, Cardinal stands to lose its statutory entitlement to a marijuana establishment license that is undeniably valuable, and it is unclear if Cardinal will be able to acquire such a license in the future. (*Id.*). Further, Guiahi's removal from the board would not cause her personal harm. (*Id.*).

The Court, however, no longer finds that the public interest tips in Cardinal's favor. Aside from its renewed request for relief related to its interpretation of its bylaws, Cardinal's form of order now seeks *only* mandatory injunctive relief. (Doc. 22-1 at 3).

"Because mandatory preliminary injunctions go 'well beyond simply maintaining the status quo [p]endente lite,' they are 'particularly disfavored' and 'are not issued in doubtful cases.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 n.13 (9th Cir. 2019) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (alteration in original)). Further, the Court is also mindful that this case involves accusations of criminal conduct on both sides. The Court does not take these accusations lightly and will not err on the side of assuming criminal conduct.

The Court also finds that the public interest would not favor corporate board directors accusing each other of criminal conduct to receive a favorable ruling from a Court on a time-sensitive issue on which the members of the board cannot agree. Accordingly, the Court will require a clear showing of criminal conduct to merit injunctive relief. *See S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1139 (9th Cir. 2021) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" (quoting *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012))).

  **b.**  **Serious Questions Regarding the Merits**

    **1.**  **Bylaw Removal**

As a preliminary matter, Cardinal argued at the preliminary injunction hearing that Guiahi was properly removed under its bylaws and is no longer an officer of Cardinal or a member of its board of directors. Because the Court already ruled on the merits of this argument, *see Cardinal Square Inc.*, 2021 WL 824398, at * 7–8, Guiahi orally moved to dismiss this argument at the preliminary injunction hearing. (Doc. 23). The Court agrees with Guiahi that Cardinal's continued efforts to press this argument at the preliminary injunction hearing and its inclusion of related relief in its proposed form of order effectively amount to a motion for reconsideration of the Court's prior Order. As Cardinal itself acknowledged, the issue of removal under Cardinal's bylaws is a pure issue of law and none of the evidence presented at the preliminary injunction hearing affects the outcome.

Although Cardinal's request likely falls short of meeting the Local Rule's

requirements of a motion for reconsideration, *see* LRCiv 7.2(g)(1) ("The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."), the Court will briefly address the three disagreements with the Court's prior Order that Cardinal raised at the hearing.

First, Cardinal relies on A.R.S. § 10-3803(A)—which provides that "[a] board of directors shall consist of one or more individuals, with the number specified in or fixed in accordance with the articles of incorporation or bylaws"—to argue that the term "board of directors" does not necessarily include more than one director. Cardinal further notes that Section 6.4 of its bylaws—which provides "[u]nless modified by the Board of Directors, pursuant to these Bylaws, the Board of Directors shall consist of not less than two (2) Directors and not more than nine (9) Directors"—allows its board of directors to be modified to a single director. (Doc. 1-3 at 39). Accordingly, Cardinal argues that a single director may act on behalf of its "board of directors" consistent with its bylaws.

The Court does not doubt that a corporation's bylaws may allow a single director to act on behalf of its board of directors, but the issue in this case is whether *Cardinal's bylaws* allow a single director to act on behalf of its board of directors *when its board consists of two members*. And for the reasons set forth in the Court's prior Order, the Court continues to hold that Cardinal's bylaws do not. Cardinal's bylaws refer to the board as a collective, and "[i]t logically follows that when the board is composed of only two members, the support of both members is required to take an action on behalf of the board as a collective." *Cardinal Square Inc.*, 2021 WL 824398, at *7.

Cardinal's second and third arguments rely on Section 6.5 of its bylaws. Cardinal directs the Court to the last sentence of Section 6.5, which states that "if the Corporation has greater than two (2) Directors, all such actions shall require the consent and approval of a majority of the Directors then serving." (Doc. 1-3 at 39). It also notes that a prior version of its bylaws specifically required the unanimous vote of a two-member board to take any action, and Cardinal did not include this provision in its third amended bylaws.

(Doc. 9-1 at 6). Cardinal argues that by implication, Section 6.5's last sentence and the change between versions of the bylaws must mean that a majority of a two-member board is not required for all actions. In light of the Court's ruling on Cardinal's first argument, the Court continues to hold that these negative inferences are insufficient to overcome the language of the bylaws. *See Cardinal Square Inc.*, 2021 WL 824398, at *7–8.

In sum, the Court acknowledges Plaintiff's respectful disagreements with its prior Order, but the Court is not persuaded to depart from its original ruling.

### 2. **Judicial Removal**

As to the issue of judicial removal, Cardinal argues that judicial removal of Guiahi is appropriate under A.R.S. § 10-3810(A)(1)–(2), which provides that a court "may remove a director of the corporation from office . . . if the court finds" both that "[t]he director engaged in fraudulent conduct or intentional criminal conduct with respect to the corporation" and "[r]emoval is in the best interests of the corporation." Cardinal advances two theories of misconduct that would merit Guiahi's removal, one based on fraud and one based on intentional criminal conduct.

Cardinal first argues that Guiahi engaged in fraudulent conduct when she "falsely asserted to ADHS and the ACC that she is a Cardinal Director and Officer." (Doc. 2 at 17). Because the Court finds that no serious questions exist regarding whether Guiahi remains a member of Cardinal's board, the Court concludes no serious questions exist as to whether her representations to ADHS and the ACC were fraudulent. Accordingly, Cardinal fails to show an entitlement to injunctive relief under its fraud theory.

Second, Cardinal argues that Guiahi intentionally committed theft by extortion in violation of Arizona law when she, through Schube, "demanded payment of one million dollars in exchange for her cooperation, which she knew was necessary for Cardinal to successfully submit its application for [a marijuana establishment] license." (*Id.*). Under Arizona law, theft by extortion includes "seeking to obtain property . . . by means of a threat to" "[c]ause damage to property," "[a]ccuse anyone of a crime or bring criminal charges against anyone," or "[c]ause anyone to part with any property." A.R.S. § 13-

1804(A)(3), (5), (8). On this issue, the Court finds that Cardinal does not meet its burden of showing intentional criminal conduct.

Cardinal's only allegation of criminal conduct relates to Bianchi and Schube's December 2 phone call. Both Bianchi and Schube testified to their version of the conversation at issue. In their respective testimony, both Bianchi and Schube seemed to genuinely believe their recollection of the conversation. But the Court is aware that both Bianchi and Schube have an interest in the outcome of this case, which could explain their differing recollections.

Bianchi's law firm has represented The Pharm since 2012 and Cardinal since its inception in 2016. And because of The Pharm's significant investment in Cardinal, it has an interest in removing Guiahi from her position on Cardinal's board and acquiring the marijuana establishment license. Schube is an attorney with the law firm presently representing Guiahi. Aside from any bias she may have in favor of her client, a finding by this Court that Guiahi engaged in intentional criminal conduct through Schube would seemingly render Schube an accomplice to that conduct. *See* A.R.S. § 13-301(2) (defining "accomplice" as one who "[a]ids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense.").

In light of these inherent biases, the Court does not find that it can categorically accept or reject either Bianchi or Schube's testimony. Accordingly, the Court also considers the documentary evidence filed in this case. Cardinal argues that the Court should view Bianchi's version of events as more credible because it is supported by notes Bianchi prepared the same day to memorialize the conversation. (Doc. 15-1 at 5). But Bianchi's own notes repeatedly refer to Schube's request as a "settlement demand," rather than any sort of threat. (*Id.*). The Court finds that this terminology is consistent with Schube's assertion that her statements to Bianchi were not a threat but rather a discussion of her client's current positions. (Doc. 12-1 at 3–4). Further, although Cardinal's complaint (that Bianchi verified) states that "Guiahi's demand for $1,000,000 in exchange for her cooperation constitutes theft by extortion under A.R.S. § 13-1804(A)(3) and (8)" (Doc 1-

3 at 16), Bianchi stopped short in her testimony of characterizing Schube's statements as extortion. The Court finds that this also weighs against a likelihood that Schube relayed a threat on behalf of Guiahi. Although the email that Bianchi send Schube following their phone conversation accused Guiahi of "holding her position on the Board hostage for her own financial gain," Schube's response referred to Bianchi's statement as a "false accusation[]" and requested documents relevant to an issue before Cardinal, which demonstrates that Guiahi was not categorically abandoning her responsibility to Cardinal. (Doc. 12-1 at 9, 11).

Additionally, because Bianchi's firm represented both Cardinal and The Pharm and the entities were involved with one another, the Court does not find it unusual that a conversation between Schube and Bianchi would involve a discussion of issues related to both companies. Nor would it be unusual for the parties to attempt to reach a "global settlement" that resolved issues relating to both The Pharm and Cardinal simultaneously. Absent some threat from Guiahi, an offer to resign from Cardinal in exchange for a payment related to The Pharm, would not rise to the level of criminal conduct.

The same applies to Guiahi's alleged threat to report The Pharm's misconduct to the Attorney General's (AG) office during the phone call. Here, too, Bianchi and Schube offer different versions of this topic of the phone call. Consistent with her notes, Bianchi testified that Schube stated Guiahi would report The Pharm's alleged criminal conduct unless she received the requested sum of money. Schube testified that the discussion regarding the AG's office was related to Cardinal's improper attempt to remove Guiahi from the board, and not any criminal conduct of The Pharm.

First, it bears mention that Cardinal's comprehensive 129-paragraph verified complaint does not include any allegations related to a threat to report any misconduct to the AG's office, (*see* Doc. 1-3 at 16 (alleging that Guiahi's conduct "constitutes theft by extortion under A.R.S. § 13-1804(A)(3) and (8)," not under A.R.S. § 13-1804(A)(5)), and Cardinal did not make any such allegation until after the Court ordered supplemental briefing on the issue of extortion. (Doc. 11; Doc. 15 at 10). But more fundamentally,

Schube testified that the December 2 phone call occurred only a few days after she was retained as Guiahi's counsel, and at that point, she was still trying to understand the complete background of the parties to the case. The Court finds that this testimony is credible given Guiahi's extended history of conflicts with both The Pharm and Cardinal.

The Court does not find it unlikely that at such an early stage in representation, an attorney may lay out his or her client's grievances and potential avenues for recourse, which do not necessarily constitute a threat as required for extortion.

At bottom, Cardinal has not met its burden to show that Bianchi's impression of her conversation with Schube's was anything beyond a misunderstanding. Accordingly, on this record, the Court does not find that Cardinal has met its burden to persuade the Court that the "extraordinary and drastic remedy" of preliminary injunctive relief is appropriate.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that is Cardinal's Motion for a Preliminary Injunction (Doc. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that Guiahi's oral motion to dismiss in part Cardinal's Motion for a Preliminary Injunction (Doc. 23) is **DENIED AS MOOT**.

Dated this 8th day of March, 2021.

James A. Teilborg
Senior United States District Judge